### 6984. READ PHOSPHATE COMPANY *v.* BROOKS.

Where the holder of a note for the purchase-money of personalty, secured by a duly recorded mortgage thereon, retakes possession of the property, by agreement with the purchaser, at an agreed valuation to be applied on the debt, no part of which has been paid, and cancels the note and sells the property to another person, the latter may successfully maintain his claim of title to the property as against a junior mortgage made by the original purchaser during the time he was in possession of the property, which was unforeclosed at the time the property was returned to the original seller, if it appears that the value of the property at the time it was returned did not exceed the amount then due on the purchase-money debt, and the transaction was free from any fraud against the holder of the junior mortgage.

DECIDED JUNE 23, 1916.

Levy and claim; from city court of Blakely—Judge Sheffield. August 16, 1915.

*C. J. Taylor,* for plaintiff in error.   *Calhoun & Askew,* contra.

WADE, C. J.  The undisputed evidence showed that Askew sold to Reeves the two mules in dispute, taking from Reeves a mortgage on the property to secure the purchase-price of $550, which was duly recorded; that Reeves kept the mules two years without paying anything whatever upon the purchase-price; that at the expira-

tion of this period Askew, by agreement with Reeves, and without knowledge that Reeves had, while in possession of the property, given a mortgage thereon to Read Phosphate Company, accepted the mules back at an agreed valuation of $450, as part satisfaction of the purchase-money mortgage, and, upon the execution by Reeves to him of a note for the balance of the original purchase-price, Askew cancelled the mortgage and surrendered it to Reeves; that subsequently Askew resold the mules to Brooks, who interposed a claim to the property when the mules were levied upon under an execution issued upon the foreclosure of the mortgage of Reeves to Read Phosphate Company; and that Askew, in taking back the mules from Reeves in part settlement of the purchase-price, acted in good faith.

It does not appear from the brief of evidence whether, at the time the mules were by agreement returned to Askew by Reeves, the value of the property was in fact greater or less than the original price at which the mules were sold to Reeves by Askew. It is true the evidence shows that Reeves and Askew agreed on the sum of $450 as a proper valuation for the mules at the time that Askew accepted them back, but there is no evidence to show what was the market or actual value of the property, and, so far as appears, the mules may have been worth more than $550 when the contract between Reeves and Askew was rescinded, and therefore at that time Reeves may have had an equity in the property which would have been subject to the mortgage executed by him to Read Phosphate Company, provided that mortgage constituted a valid lien.

The case of *Wiggins* v. *Tumlin*, 96 *Ga.* 753 (23 S. E. 75), is not in conflict with this ruling, since it appears, from the recital in the decision, that the fair value of the property was not, at the time of the rescission of the contract and the return of the mortgaged property to the creditor, greater than the agreed purchase-price. In *Duncan* v. *Clark*, 96 *Ga.* 263, 265 (22 S. E. 927), the Supreme Court, in referring to the *Wiggins* case, supra, said: "The case of *Wiggins* v. *Tumlin*, . . is distinguishable from the case at bar. Indeed, that case was decided upon its own peculiar facts. There it appeared that the mortgage was to secure the payment of a promissory note given for the purchase-money of the identical property described in the mortgage. When the note

matured nothing whatever had been paid upon it, and the purchaser, being unable to pay it in cash, simply returned to the seller the property itself in satisfaction of the debt. It appeared beyond question that this was done in absolute good faith and without fraud of any kind, and that the property was not worth more than the amount of the note. While it is true that the mortgage did not vest any title in the mortgagee, he had, both in law and in justice, the highest and best lien upon the property; and, as between himself and the debtor, there was certainly no good reason why the latter should not be permitted to surrender in satisfaction of the note and mortgage the very property for which they were given. In a case of this kind, the opportunity to perpetrate a fraud upon other persons was very slight indeed, if it existed at all; for every one well knows that personal property, after being used, is rarely worth as much as it was before. Again, the mortgagee had shown diligence by contracting for a lien upon the property sold, the purpose of which was to secure beyond peradventure the payment of the purchase-money. In short, it was simply a case where one bought from another property for which he was unable to pay, and subsequently returned it to the seller in settlement of the debt, who at that time had a higher and better right than any other person to make his money out of this very property, and the circumstances were such that no other creditor could possibly be injured by permitting this to be done." Under the principle plainly enunciated in the *Duncan* case, supra, it is clear that had the evidence shown "that the property was not worth more than the amount of the note," the transaction between Askew and Reeves would have vested title in the former, and therefore the title of Brooks, who purchased from Askew, would have been good as against a junior mortgage made by Reeves to the Read Phosphate Company. While it is probable that on another trial the evidence may definitely establish that the value of the mules at the time when Askew accepted them from Reeves at an agreed valuation of $450 was in fact less than the original purchase-price of $550, it can not be assumed as a matter of law that this is true; and consequently the court erred in finding in favor of the claimant, and we are compelled to send the case back for a new trial.

In the *Duncan* case, supra, a very plain distinction is drawn between a case in which the superior lien arises by operation of law and

not by contract (as in *Prince* v. *Walker*, 1 *Ga. App.* 282, 58 S. E. 61), and a case in which the vendee simply returns to the vendor property for which he is unable to pay in settlement of the debt, where no other person has a higher and better right than the vendor to make his money out of the property, and the circumstances are such that no other creditor could possibly be injured by permitting this to be done, provided the value of the property so returned does not exceed at the time of its return the amount of the then existing indebtedness for the purchase money. In the case of *Booze* v. *Neal*, 6 *Ga. App.* 279 (64 S. E. 1104), the junior judgment against the defendant was entered on the general execution docket prior to the date of the transfer of the title of the property levied upon from the defendant to the claimant, whose debt was secured by a mortgage, to satisfy which the transfer was effected. This, of course, presented an entirely different state of facts. In the case of *Deariso* v. *Lawrence*, 3 *Ga. App.* 580 (60 S. E. 330), the vendor of personal property took a note for the purchase-money, reserving the title as security, and duly recorded the note, and this court held that the holder of an execution against the purchaser could not lawfully cause the execution to be levied on this property, until payment or tender of the amount due the seller, notwithstanding the purchaser had an equity in the property by reason of having paid a material portion of the purchase-price, but nevertheless, if the execution was levied upon the property, and thereafter the defendant in fi. fa. returned the property to the seller with an agreement that the latter should resell the property and credit the proceeds on the purchase-money note, and pursuant to this agreement the property was resold, the purchaser at the second sale could by a claim successfully resist the enforcement of the execution. In that case, it appears, the levy of the inferior lien was made upon the property before the defendant sought to transfer the title to the holder of the superior lien.

*Judgment reversed.*